**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:06-CR-139 CAS |
| | ) | |
| KULDEEP SINGH SEKHON, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendant Kuldeep Singh Sekhon's motion to transfer venue of this action from the Southeastern Division in Cape Girardeau to the Eastern Division in St. Louis. The defendant has been charged with one count of knowingly and intentionally possessing a list I chemical, pseudoephedrine, knowing, or having reasonable cause to believe, that the listed chemical would be used to manufacture methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(c). The government opposes the motion to transfer venue. Defendant did not file a reply in support of the motion and the time to do so has passed. For the following reasons, the Court will deny the motion.

**Legal Standard for Change of Venue**

Defendant seeks to transfer the trial in this case on the grounds of prejudice pursuant to Federal Rule of Criminal Procedure 21(a), and pursuant to Federal Rule of Criminal Procedure 18. Rule 21 of the Federal Rules of Criminal Procedure provides for a transfer of venue for trial, as follows:

> (a) For Prejudice. Upon the defendant's motion, the court must transfer the proceeding against that defendant to another district if the court is satisfied that so

great a prejudice against the defendant exists in the transferring district that the
defendant cannot obtain a fair and impartial trial there.

Rule 21(a), Fed. R. Crim. P.

Rule 18 states in relevant part, "The court must set the place of trial within the district with due regard to the convenience of the defendant and the witnesses, and the prompt administration of justice." Rule 18, Fed. R. Crim. P.

Defendant contends that he cannot receive a fair and impartial trial in the Southeastern Division of the Eastern District because (1) it is impossible to empanel a jury venire that contains a fair cross-section of the community of the Southeastern Division, which has disproportionately fewer Asian Indians and African-Americans than the Eastern Division, and (2) because the counties of the Southeastern Division have been "disproportionately afflicted by methamphetamine-related crime," its residents "harbor a biased view of any act involving pseudoephedrine, reinforced by dense coverage of the local press," such that a fair and impartial hearing is impossible. Mot. to Transfer at 2. The Court will address each point separately.

**Discussion**.

    **A. Jury Composition Issue**.

Defendant argues that there are so few Asian Indians and African-Americans residing in the Southeastern Division, it would be impossible for any jury pool in that division to contain a proportionate representation of Asian Indians and African-Americans "consistent with their numbers in the voting age population of the entire Eastern District of Missouri." Mot. to Transfer at 3. Defendant cites United States Census Bureau data showing that while the Eastern Division of the Eastern District of Missouri has 4,671 Asian Indians eighteen years of age or older, counties in the

Southeastern Division reported too few Asian Indians to make a statistically significant estimate.[1]
Defendant also asserts that sixteen percent (16%) of the residents of the Eastern Division are African-American, while only five and a half percent (5.5%) of the residents of the Southeastern Division are African-American. Thus, defendant contends that Asian Indians and African-Americans are systematically excluded from jury service in the Southeastern Division "as a function of geography -- jury venires in the Southeastern Division will not reflect a fair cross-section of the community of the Eastern District because the Southeastern Division disproportionately lacks residents of color, particularly those of Asian Indian or African-American descent." Id.

The government responds that although the Constitution prohibits the purposeful exclusion of a racial or ethnic group from the juror-selection process, there is "no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population." United States v. Garcia, 991 F.2d 489, 491 (8th Cir. 1993) (quoting Taylor v. Louisiana, 419 U.S. 522, 530 (1975)). The government asserts that defendant errs as a matter of law by assuming he cannot receive an unbiased jury panel based on the demographics of southeastern Missouri. The government notes that the Supreme Court has stated, "There is no constitutional presumption of juror bias for or against members of any particular racial or ethnic groups." Rosales-Lopez v. United States, 451 U.S. 182, 190 (1981).

The Sixth Amendment right to a jury trial has been interpreted by the Supreme Court as requiring that grand and petit juries be drawn from a pool that represents a fair cross-section of the

---

[1]Defendant does not provide any citation or evidence to support his census data, or even indicate the census from which the data is drawn. Nonetheless, the government does not challenge the census data or other statistical information offered by plaintiff, and the Court accepts this information as true for purposes of this memorandum and order.

3

community. See Taylor v. Louisiana, 419 U.S. 522, 528 (1975). This requirement is concerned primarily with the defendant's right to be tried by a jury fairly representative of the community. "In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." Duren v. Missouri, 439 U.S. 357, 364 (1979).

Turning to the first Duren requirement, it is clear that African-Americans are a distinctive group in the Southeastern Division community. See United States v. Garcia, 991 F.2d 489, 491 (8th Cir. 1993) (holding that African-American are a distinctive group; citing Peters v. Kiff, 407 U.S. 493 (1972)).

The parties appear to have assumed that Asian Indians constitute a distinctive group for purposes of the first Duren requirement. For purposes of an equal protection analysis, Asian Indians are distinctive, but possibly not for purposes of the Sixth Amendment fair cross-section requirement in this case. "Distinctiveness" under the Sixth Amendment implies more than minority status. For example, in Taylor v. Louisiana, 419 U.S. at 530, the Supreme Court stated that the Sixth Amendment is violated where "large, distinctive groups are excluded from the pool." Similarly, the Court stated in Duren that the group in question must be "of sufficient magnitude and distinctiveness so as to be within the fair-cross-section requirement[.]" 439 U.S. at 370.

Another district court in the Eighth Circuit has cogently explained the Supreme Court's concern with the size of the relevant group in Sixth Amendment cases:

4

> Within most communities there are innumerable small, distinct groups[--] religious sects, racial minority groups, a myriad of nationalities. If the Sixth Amendment required each of these to be proportionately represented on juror lists, it would be virtually impossible to utilize a random selection system such as that envisioned by the Jury Selection Act, and the selection process would be constantly subject to attack by defendants. Undoubtedly with these types of problems in mind, the Court in Taylor observed that the "fair-cross-section principle must have much leeway in application." 419 U.S. at 538.

United States v. Hanson, 472 F. Supp. 1049, 1053 (D. Minn. 1979) (stating that the court "seriously questions whether a group that constitutes 1.3 percent of the population" in the judicial division was distinctive within the meaning of the Sixth Amendment), aff'd, 618 F.2d 1261 (8th Cir.), cert. denied, 449 U.S. 854 (1980).

In this case, the Court concludes that because there are insufficient Asian Indians residing in the Southeastern Division to be statistically significant, Asian Indians are not a "distinctive" group in that division for purposes of Sixth Amendment analysis. Moreover, if the Court were to assume that Asian Indians are present in sufficient numbers in the Southeastern Division to be a distinctive group under the Sixth Amendment, defendant has not offered any argument or evidence to establish that Asian Indians otherwise meet the test for distinctiveness under the Sixth Amendment. "A group of people is distinct when they have a shared attribute that defines or limits their membership, and when they share a community of interest." United States v. Black Bear, 878 F.2d 213, 214 (8th Cir. 1989) (holding that Native American people in South Dakota are distinct and form a cultural community). As a result, the Court finds that defendant has not established that Asian Indians are a distinctive group in the Southeastern Division for purposes of this case.

The second requirement for a Sixth Amendment prima facie case is substantial underrepresentation of the group in question in the source from which grand and petit jurors are

drawn. Duren, 439 U.S. at 364. The underrepresentation must be so substantial that the jury pool does not fairly represent a cross-section of the community. Id. In this case, defendant does not even argue that Asian Indians or African-Americans are underrepresented in the source from which Southeastern Division jurors are drawn, much less that they are substantially underrepresented. Therefore, defendant fails to establish the second element of the prima facie case.

The third requirement for a Sixth Amendment prima facie case is that the underrepresentation of Asian Indians and African-Americans "was due to their systematic exclusion in the jury-selection process." Duren, 439 U.S. at 366. In other words, it must be established that "the cause of the underrepresentation was . . . inherent in the particular jury-selection process utilized." Id.; United States v. Ireland, 62 F.3d 227, 231 (8th Cir. 1995). Defendant attempts to satisfy this requirement by asserting that as a function of "geography"--more correctly, population demographics--Asian Indians and African-Americans are excluded from the jury selection process.

Defendant's argument misses the point of the third requirement. There must be something about the jury-selection process itself that causes members of a distinctive group to be included in jury pools in significantly smaller percentages *than they exist in the community*.[2] See, e.g., Duren, 439 U.S. at 364, 366-67 (systematic exclusion because defendant demonstrated that state law exempting women from jury selection upon request resulted in underrepresentation of women in every weekly venire for one year). Defendant does not argue that Asian Indians or African-Americans are excluded from the Southeastern Division jury pool because of something "inherent in the particular jury-selection process utilized." Id. at 366. Rather, defendant simply argues that fewer

---

[2]Defendant asserts that there are virtually no Asian Indians in the Southeastern Division. As a result, if there are few or no Asian Indians in the jury pool, Asian Indians cannot be said to be underrepresented on jury venires in comparison to the community's population.

Asian Indians and African-Americans live in the Southeastern Division than in the Eastern Division and therefore he is entitled to a change of venue to the Eastern Division.

Defendant does not have a constitutional right to a transfer of venue to the Eastern Division on the theory that the disparity between the Asian Indian and African-American populations in the Southeastern and Eastern Divisions jeopardizes his right to fair trial. Defendant does not have the constitutional right to a representative jury, nor does he have the right to a jury of a particular composition. "Although the Constitution prohibits purposeful exclusion of an identifiable racial group from the juror-selection process, there is 'no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population.'" Taylor, 419 U.S. at 538.

For the reasons discussed above in connection with the Duren requirements, defendant has failed to show that he would be denied the right to an impartial jury selected from a fair cross-section of the community if he is tried by a jury chosen from a Southeastern Division venire. Cf. United States v. Cannon, 88 F.3d 1495, 1501-02 (8th Cir. 1996) (motion to change venue properly denied; statistical evidence that African Americans constituted 2.17 percent of Minnesota population and .06 percent of North Dakota population was insufficient to prove that African-American defendants would not receive a fair and impartial trial in North Dakota where one of the four drug sales at issue occurred); United States v. Taylor, 316 F.Supp.2d 722, 728-29 (N.D. Ind. 2004) (African-American defendants, whose criminal prosecution was transferred for administrative reasons from one division of the district to another division with a smaller African-American population, had no constitutional right to a venire panel selected from the first division). This aspect of defendant's motion to transfer venue should therefore be denied.

**B. Pretrial Publicity Issue**.

Defendant also moves for a change of venue to the Eastern Division on the basis that the jury pool in the Southeastern Division has been disproportionately impacted by methamphetamine-related incidents to the extent that jurors' partiality in meth-related cases must be doubted. In support, defendant asserts that fifty-seven articles mentioning the word "meth" appeared in the last year in the Southeast Missourian, the regional newspaper for Southeast Missouri, and that there was an October 20, 2006 editorial in the newspaper titled "Fighting Meth."

Defendant also asserts that statistics collected by the Missouri Highway Patrol "indicate that individuals in the Southeastern Division are 2.1 times as likely, per capita, to have ben involved in a meth-related incident." Mot. to Transfer at 6. Thus, defendant argues that a resident of the Southeastern Division is at least twice as likely to have witnessed or been affected by a meth-related crime than a resident of the Eastern Division. Defendant makes the sweeping conclusion that "residents of the Southeastern Division have a relatively stronger negative opinion to [sic] anyone even charged with a meth-related crime, combined with a strong and swift urge to convict and punish such individual as a 'scourge' on their community." Id. at 7.

The government responds that defendant errs by assuming (1) he cannot get a fair trial because Missouri has a methamphetamine problem, and (2) the jury pool is irrevocably tainted by media coverage of the issue. The government asserts that mere exposure to publicity or even the formation of tentative opinions by some jurors is not enough to require a change of venue: "The ultimate test is whether a juror has been exposed to pre-trial publicity and, if so, whether he or she can set aside any impression or opinion resulting from that exposure and render a verdict based solely on the evidence presented at trial." United States v. Harvey, 756 F.2d 636, 640 (8th Cir. 1985).

The government further responds that a change of venue is necessary when pretrial publicity has been intensive and extensive, or where an examination of the entire jury panel reveals such prejudice that the court could not believe the voir dire answers of the prospective jurors and "would be compelled to find bias or preformed opinion as a matter of law." Harvey, 756 F.2d at 640 (internal citations omitted). Further, the government asserts that regardless of the amount of pre-trial publicity, the law is that if a fair jury can be empaneled, no change of venue is required, citing United States v. Glaze, 866 F.2d 253, 254 (8th Cir. 1989), and United States v. Bliss, 735 F.2d 294, 298 (8th Cir. 1984).

The government notes that defendant does not allege he has been subjected to "intensive and extensive" pretrial publicity, and asserts that defendant has not been accused of a particularly infamous crime. The government states that while law-abiding citizens presumably will have some degree of indignation concerning the violation of society's laws by others, jurors are presumed to follow the Court's instructions which direct them not to allow sympathy or prejudice to influence them and to base their verdict only on the evidence, common sense and the law. Finally, the government asserts that the motion to transfer is premature, because the appropriate procedure for determining whether a fair jury can be empaneled is to first voir dire the venire panel to determine what effect, if any, such publicity has had on the panel. Swindler v. Lockhart, 885 F.2d 1342, 1347-48 (8th Cir.), cert. denied, 495 U.S. 911 (1989).

Where a motion for change of venue is made pursuant to Rule 21(a) based on pretrial publicity, the applicable standard in the Eighth Circuit is as follows:

> When a change of venue is requested due to pretrial publicity, we engage in a two-tiered analysis. First, we must determine whether the pretrial publicity was "so extensive and corrupting" that we must presume "unfairness of constitutional

9

> magnitude" existed. [United States v. Blom, 242 F.3d 799, 803 (8th Cir.)] (quoted sources and internal marks omitted)[, cert. denied, 534 U.S. 880 (2001)] . . . . Second, if we were to determine that the pretrial publicity was not so corrupting as to warrant a presumption of unfairness, then we must look at the voir dire testimony of those who became trial jurors to determine if they "demonstrated such actual prejudice that it was an abuse of discretion to deny a timely change-of-venue motion." [Id.]

United States v. Nelson, 347 F.3d 701, 707-08 (8th Cir. 2003), cert. denied, 543 U.S. 978 (2004); accord United States v. Gamboa, 439 F.3d 796, 815 (8th Cir.), cert. denied, 127 S. Ct. 605 (2006).

In the instant case, only the first tier of the analysis is applicable, because defendant relies solely on pretrial publicity and no voir dire has taken place. The Court must therefore determine whether the pretrial publicity was "so extensive and corrupting" that it must presume "unfairness of constitutional magnitude." Nelson, 347 F.3d at 707. The Eighth Circuit has instructed "that the presumption of inherent prejudice is reserved for rare and extreme cases, and that a defendant must satisfy a high threshold of proof in order to prove inherent prejudice." Id. at 707-08 (internal punctuation and citations omitted).

The Eighth Circuit has considered the extent and nature of pretrial media coverage in the context of motions for change of venue. In United States v. Allee, 299 F.3d 996 (8th Cir. 2002), the court stated, "The mere existence of press coverage . . . is not sufficient to create a presumption of inherent prejudice and thus warrant a change of venue. To create a presumption, the coverage must be inflammatory or accusatory." Id. at 1000; see United States v. Blom, 242 F.3d at 804 (also considering whether the coverage was extensive and whether that coverage was "inflammatory or accusatory"); cf. Pruett v. Norris, 153 F.3d 579, 585 (8th Cir. 1998) (merely documenting the quantum of media coverage is not sufficient to establish a presumption of unfairness).

10

Defendant has not met the "high threshold of proof" to show that this is one of the "rare and extreme cases" in which the Court can presume "inherent prejudice" based on pretrial publicity, such that a transfer pursuant to Rule 21(a) is appropriate. See Nelson, 347 F.3d at 707-08. Defendant has not shown that there has been any pretrial publicity directly related to his case. The Court cannot find, based only on newspaper articles mentioning the word "meth" and one editorial opinion, that the pretrial publicity has been sufficiently corrupting that the Court must presume unfairness of constitutional magnitude. See Nelson, 347 F.3d at 707. "The mere existence of press coverage . . . is not sufficient to create a presumption of inherent prejudice," Allee, 299 F.3d at 1000, and defendant has not identified any individual press reports or series of press reports that could be characterized as "inflammatory and accusatory." See Blom, 242 F.3d at 804. Further, there is no evidence in the record about what opinions potential jurors may actually hold based on any exposure to pretrial publicity concerning meth-related crimes, or jurors' ability or inability to set aside preconceptions based on that publicity. Instead, there is only speculation about what potential jurors might believe. As a result, defendant has not convinced the Court that it can presume inherent prejudice based on pretrial publicity, such that a transfer pursuant to Rule 21(a) is appropriate. See Nelson, 347 F.3d at 707-08. This aspect of defendant's motion to transfer venue should therefore be denied.

Accordingly,

**IT IS HEREBY ORDERED** that the motion to transfer venue of this action filed by defendant Kuldeep Singh Sekhon is **DENIED** in all respects. [Doc. 45]

**IT IS FURTHER ORDERED** that this matter remains set for jury trial on the Court's docket of Monday, **March 10, 2008**, at **9:30 a.m.** in Cape Girardeau.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  6th  day of December, 2007.